In re Berncenia R. AYCOTT, Debtor.

COMMUNITY NATIONAL BANK AND TRUST COMPANY OF NEW YORK, Plaintiff

v.

Berncenia R. AYCOTT, Defendant.

Bankruptcy No. 184–41501–260.
Adv. No. 185–0006.

United States Bankruptcy Court,
E.D. New York.

Nov. 8, 1985.

---

**2.** There is no evidence in the record as to whether any such decals were in fact supplied and used on the machines.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C. by William M. Rifkin, Garden City, N.Y., for Bank.

Charles R. Tropp, Staten Island, N.Y., for debtor.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Chief Judge.

This is an adversary proceeding brought by a bank to declare the debt owed to it nondischargeable pursuant to § 523(a)(2)(B) of the Bankruptcy Code.[1] We find the debt dischargeable.

### I

### FACTS

On September 26, 1984 Berncenia Aycott ("the debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. She listed unsecured debts which included among others, student loans and a personal loan due to the plaintiff, Community National Bank ("the bank").

The personal loan was obtained by the debtor in October of 1983 on a refinancing of a previous loan due the bank. This second loan was a consolidated loan to enable the debtor to make a single, larger monthly payment to the bank in order to

---

1. Section 523(a)(2)(B) of the Bankruptcy Code provides in pertinent part:

    (a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—

    ....

    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

    ....

    (B) use of a statement in writing—

    (i) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive....

pay off mounting debts. When the consolidated loan was approved the bank issued three checks payable to the debtor and three of her creditors. The debtor endorsed each check and mailed it to the respective creditor.

In her application for the consolidated loan the debtor failed to list her prior student loans. The bank now maintains that the application constituted a materially false financial statement on which it relied when it approved the debt consolidation loan. It therefore argues that the debt to it is nondischargeable under Section 523(a)(2)(B) of the Bankruptcy Code.

At the trial of the proceedings, the debtor offered the following uncontroverted testimony regarding the events surrounding the consolidated loan.

During September 1983, realizing that she would not be able to make payments on her bills for that month, she wrote to the aforementioned three creditors requesting a month's deferment of payment to each. She also telephoned a Ms. Navarro, an employee of the bank, requesting a deferment of the payment due it for that month. She testified that Ms. Navarro told her that although she did not have authority to approve a deferment, the debtor could call a specific supervisor for such approval. The debtor further testified that she called the supervisor whose name she could not remember and explained her situation. The supervisor was unwilling to grant a deferment. However, she testified that he questioned her about her other creditors, and suggested that she apply for a consolidated loan which would enable her to pay off her creditors and make a single monthly payment to the bank. The debtor stated that although she did not particularly want a consolidated loan, it seemed to be the only way to avoid mounting late charges.

The debtor further explained that she told the supervisor about her student loans, which were not to become due until the completion of her education in the fall of

1985.[2] After consideration, the supervisor advised her that since she was not seeking to consolidate the student loans with her other loans, she did not have to list them on the debt consolidation application. The debtor testified that she believed, based on the supervisor's advice, that she need only list those debts she was seeking to consolidate under the new loan.

Ms. Aquino, a loan officer, testified as to the loan application used by the bank. She stated that the bank revised the loan application form in September, 1983, in an attempt to clarify the directions on it. That was the month in which the debtor applied for the consolidation loan. Ms. Aquino stated that the directions on the old application form caused confusion among bank employees and applicants regarding which debts were to be listed on it. Both the old and new forms were offered into evidence. The old form stated: "List all debts including those accounts on which you are a co-maker, guarantor or endorser; mark with an 'X' those debts you wish the bank to repay with the proceeds from this loan." The new form simply states: "All outstanding debts" must be listed. It makes no reference to those debts which the applicant is seeking to consolidate. Ms. Aquino testified that at the time the debtor applied for the consolidation loan the new forms were not available. The old form was mailed to the debtor who completed it and mailed it back to the bank.

Ms. Aquino also testified that it was not policy for bank staff to go over the loan application with prospective applicants prior to their completion of it. She stated that she reviewed the debtor's completed form which was mailed to the bank and, based on the information contained in it, approved the loan. She testified that if the student loans had been listed on the loan consolidation application, the new loan would not have been approved. The bank, therefore, charges that the loan was procured through a fraudulent writing requir-

---

**2.** The debtor was paying interest on part of the student loans which was due under the Auxilia-ry Loans to Assist Students Program.

ing that the debt be deemed nondischargeable pursuant to § 523(a)(2)(B) of the Bankruptcy Code.

As has been pointed out above, the debtor maintains that she told the supervisor, to whom she had been referred, about the student loans and that he told her that she need not list them.

## II

## ISSUE

Did the debtor's failure to list her outstanding student loans on the creditor's loan application constitute fraud within § 523(a)(2)(B) of the Bankruptcy Code so that this court must find nondischargeable the individual debt that resulted?

## III

## DISCUSSION AND CONCLUSIONS OF LAW

At the outset, we observe that this adversary proceeding pertains only to the credit actually extended to the debtor in reliance on the alleged false financial statement, i.e., $1,901.81.[3] The debt owed the creditor based on the original personal loan falls within the scope of debts discharged by the Bankruptcy Code.

We find that the creditor failed to prove all of the elements necessary to establish the debt owed to it nondischargeable under § 523(a)(2)(B). That section provides that a debt may be deemed nondischargeable if the debt was procured by:

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

■ The creditor must establish each element with clear and convincing evidence. *In re Espino,* 48 B.R. 232, 234 (Bkrtcy.S.D. Fla.1985).

We address the last element first and find that the debtor did not exhibit the requisite "intent to deceive" when she completed the loan application. We find credible the debtor's testimony regarding her telephone conversation with a supervisor. Her uncontroverted testimony establishes that she conferred with a supervisor and that she came away from this conversation with the impression that it was not necessary for her to list any debts other than those she sought to have consolidated by the loan.

Moreover, the testimony offered by the creditor's loan officer regarding the loan application form buttresses the debtor's contentions. According to the loan officer, the bank realized that the directions on the loan application were unclear and generated some confusion. Apparently, the bank's employees, including the supervisor who spoke to the debtor on the telephone, were confused about what information the bank required on the application. At the time the debtor submitted her application new forms which corrected the situation were not yet available.

■ We find that the application form supplied by the bank coupled with the debtor's conversation with a bank supervisor could have led an applicant such as the debtor to believe that she need only list those debts that she wished to consolidate. We, therefore, cannot find that the debtor intended to deceive the bank by listing only those debts.

Since the bank has failed to prove one of the requisite elements of § 523(a)(2)(B), it is unnecessary to go further. However, we also observe that the bank's alleged reliance on the loan application does not satisfy the "reasonable reliance" requirement of § 523(a)(2)(B). Some courts have incorporated a duty of ordinary care into

---

**3.** This is the "fresh cash" doctrine. *See* Zaretsky, *The Fraud Exception to Discharge Under the New Bankruptcy Code,* 53 Bankr.L.J. 253 (1979) for a discussion of the doctrine and applicable cases.

the concept of reasonable reliance. *See, In re Shepherd,* 13 B.R. 367, 372 (Bkrtcy.S.D. Ohio 1981) (creditor cannot conduct business without due care and then claim that as a result of a debtor's deception it extended credit).

 Reasonable reliance has not been found when a creditor failed to verify or investigate information given on a financial statement. *In re Duncan,* 35 B.R. 323 (Bkrtcy.W.D.Ky.1983). We find that the bank's failure to investigate the information on the application together with its use of a form which caused confusion evinced a lack of ordinary care. Thus, the bank's reliance on the application was not reasonable.

Based on the bank's failure to establish all of the elements of § 523(a)(2)(B), we find the debt dischargeable.

SO ORDERED.