**In re Donald McCORMICK, Debtor.**

**HOME INSURANCE COMPANY, Plaintiff,**

v.

**Donald McCORMICK, Defendant.**

Bankruptcy No. 86–484.
Adv. No. 86–381.

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 5, 1987.

Thomas P. Lutz, Dickie, McCamey & Chilcote, Pittsburgh, Pa., for plaintiff.

Mark L. Glosser, Lampl, Sable, Makoroff & Libenson, Pittsburgh, Pa., for defendant.

Gary L. Smith, Pittsburgh, Pa., Trustee.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Before the Court is Plaintiff's *Motion For Judgment On The Pleadings On Its Complaint*, wherein it seeks a finding that the debt owed it is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). We find that Defendant has committed at least a defalcation while acting in a fiduciary capacity, and that judgment on the pleadings should be granted.

## FACTS

Plaintiff is an insurance company which issues policies through agreements with many and various insurance agents and/or brokers. Defendant is an independent insurance agent, duly licensed under Pennsylvania law, and President, owner, sole insurance agent, and only full time employee of Wemack Insurance Agency, Inc. ("Wemack").

In March of 1981, Defendant, as President, signed an Agency Agreement between Plaintiff and Wemack, which provided that agents would write insurance policies and collect premiums. Although the amounts due to Plaintiff were to be remitted within forty-five (45) days after receipt, Wemack, through Defendant herein, collected premiums but did not remit same to Plaintiff. Defendant claims he is presently unable to determine the amounts so withheld.

Pursuant to the terms of the Agency Agreement, Plaintiff notified Wemack and Defendant on January 16, 1985, that it chose to terminate the Agreement as of April 29, 1985. On April 23, 1985, still in conjunction with said Agency Agreement, Plaintiff and Wemack, through Defendant, entered into a modified agency relationship

to allow for the orderly servicing of policies, still in effect at the time of the agency termination, until their expirations.

Wemack filed a Chapter 11 bankruptcy petition on June 14, 1985. Defendant filed a Chapter 7 bankruptcy petition on February 27, 1986. Plaintiff seeks to have the Court hold nondischargeable the amounts due as a result of these unremitted premiums.

### ANALYSIS

A finding for the Movant on the Pleadings is not to be taken lightly. We must only grant such a Motion when the opposing party, viewed in the most favorable light, presents neither factual allegations nor legal premises upon which to base his defense. *Society Hill Civic Association v. Harris,* 632 F.2d 1059 (3rd Cir.1980); *Englert v. City of McKeesport,* 637 F.Supp. 930 (W.D.Pa.1986). Such summary disposition is not generally favored by the courts; however, when appropriate, an early resolution will shield the parties from the needless expenditures of time and money involved in discovery and trial. *Miller v. Indiana Hospital,* 562 F.Supp. 1259 (W.D. Pa.1983). Despite Defendant's contention, upon our review of the pleadings, we find no factual or legal issues raised by him to avoid the entry of judgment for Plaintiff.

Section 523(a)(4) states:

(a) A discharge under section 727 ... of this title does not discharge an individual from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

In order to find the debt nondischargeable, Plaintiff must show that Defendant was operating in a fiduciary capacity and that while so acting, he committed a defalcation.

In defining "fiduciary capacity" as it applies to Section 523(a)(4), several courts have held that a state statute can create the necessary fiduciary status, provided that the statute defines the res, states the fiduciary duty, and imposes a trust on funds prior to the act creating the debt. *American Insurance Company v. Lucas,* 41 B.R. 923 (W.D.Pa.1984); *In re Interstate Agency, Inc.,* 760 F.2d 121 (6th Cir. 1985); *In re Livingston,* 40 B.R. 1018 (E.D. Mich.1984); *In re Lipke,* 54 B.R. 704 (Bankr.W.D.Wis.1985); *In re Owens,* 54 B.R. 162 (Bankr.D.S.C.1984); *In re Gagliano,* 44 B.R. 259 (Bankr.N.D.Ill.1984).

Pennsylvania does statutorily impose a fiduciary duty upon insurance agents:

> Every insurance agent and broker, acting as such in this Commonwealth, shall be responsible in a fiduciary capacity for all funds received or collected as insurance agent or broker and shall not, without the express consent of his or its principal, mingle any such funds with his or its own funds or with funds held by him or it in any other capacity. Nothing herein contained shall be deemed to require any such agent or broker to maintain a separate bank deposit for the funds of each such principal, if and so long as the funds so held for each such principal are reasonably ascertainable from the books of account and records of such agent or broker.

Pa.Stat.Ann. tit. 40, § 273.1 (Purdon 1961).

The Debtor argues that the parties to the Agency Agreement are Plaintiff and Wemack, rather than Plaintiff and Defendant, and accordingly, the statute is not applicable. We disagree.

The statute binds all insurance agents acting in such capacities. Defendant admits to being a Pennsylvania licensed insurance agent. Defendant, as President of Wemack, signed the Plaintiff/Wemack Agency Agreement and was the *only* licensed insurance agent employed by Wemack. A corporate officer is personally liable for the tortious injury committed by him, regardless of a piercing of the corporate veil. He is so liable even if his actions were taken for the benefit of the corporation. *In re Interstate Agency, supra; A & M Records, Inc. v. M.V.C. Distributing Corporation,* 574 F.2d 312 (6th Cir.1978); *Davis H. Elliot Company, Inc. v. Carribean Utilities Company, Ltd.,* 513 F.2d 1176

(6th Cir.1975); Restatement (Second) of Agency § 343 (1957).

We have found no cases in our Circuit which address this issue. While the decisions of the Sixth Circuit are not binding upon us, they are certainly persuasive, and we choose to follow their analysis. Therefore, we find that Defendant did act in a fiduciary capacity.

The second necessary element for a finding of nondischargeability is that Defendant committed a fraud or defalcation. The cases interpreting the term "defalcation" have given it broad meaning, including the failure of a fiduciary to account for money received in his fiduciary capacity, whether by misapplication, negligence, ignorance, or innocence. *American Insurance Company v. Lucas, supra; In re Owens, supra; In re Wolfingtion,* 48 B.R. 920 (Bankr.E.D. Pa.1985); *In re Gagliano, supra.*

Defendant has admitted that Wemack or its employees received premium payments, although he is presently unable to determine the particulars, *inter alia,* the parties from whom said premiums were received, the date they were received, or the amounts thereof. Defendant has admitted that Wemack is indebted to Plaintiff, by listing said debt in its bankruptcy Schedules. As Defendant's fiduciary status has been determined, Defendant has equally admitted receipt and lack of remittance. This constitutes a defalcation under § 523(a)(4) of the Bankruptcy Code.

Therefore, Plaintiff is entitled to a finding that the debt owed it by the Defendant is nondischargeable pursuant to § 523(a)(4). If the parties, after discovery, cannot agree as to the amount, such determination shall be found by this Court after an evidentiary hearing.

An appropriate Order will be issued.